STEPHEN CHA-KIM* (NY - 4979357)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email:  stephen.cha-kim@arnoldporter.com

CARSON ANDERSON (CA - 317308)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
Telephone: 650.319.4500
Email:  carson.anderson@arnoldporter.com

NATALIE STEIERT* (DC - 90010655)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
Telephone: 202.942.5000
Email:  natalie.steiert@arnoldporter.com

OREN NIMNI* (MA - 691821)
AMARIS MONTES* (MD - 2112150205)
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:  (202) 455-4399
Email:  oren@rightsbehindbars.org
         amaris@rightsbehindbars.org

SUSAN M. BEATY (CA - 324048)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:  (510) 679-3674
Email: susan@ccijustice.org

MARK RAFTREY (CA - 352610)
BROOKE D'AMORE BRADLEY (CA - 353030)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3361
Email:  mark.raftrey@arnoldporter.com
brooke.damorebradley@arnoldporter.com

*Pro hac vice pending

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| A.Y.,<br><br>        Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; and ALWINE,<br><br>        Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

**TABLE OF CONTENTS**

Page

2

3    INTRODUCTION.................................................................................................................1

4    JURISDICTION AND VENUE..........................................................................................2

5    THE PARTIES ....................................................................................................................3

6    CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS .............5

7    JURY DEMAND .................................................................................................................6

8    FACTUAL ALLEGATIONS..............................................................................................6

9    CLAIMS FOR RELIEF ....................................................................................................15

10    PRAYER FOR RELIEF....................................................................................................25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1    Plaintiff A.Y. ("Plaintiff"), by and through her attorneys allege against the Defendants as

2  above captioned as follows upon information and belief:

3                                    **INTRODUCTION**

4        1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI

5  Dublin"), a federal female low-security prison with an adjacent satellite camp, have been

6  subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but

7  not limited to: rape and sexual assault; manipulation and sexual coercion, including officers

8  entering into relationships with incarcerated individuals and officers forcing incarcerated

9  individuals to undress in order to be released from cells or for exchange of goods; degrading

10 sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other

11 forms of abuse during medical exams; and targeted abuse towards immigrants under threat of

12 deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been

13 aware of these problems for decades and have failed, and continue to fail to take action to protect

14 those in its care by preventing and addressing rampant staff sexual misconduct.

15       2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal

16 investigation, multiple Congressional inquiries, and national media attention.  The United States

17 Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its

18 causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and

19 Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP

20 management failures enabled continued sexual abuse of female prisoners by BOP's own

21 employees."[1]

22       3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et

23 seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse

24 from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

25

26 _____

   [1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN

27 FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-
   content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-

28 %20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf
   (hereinafter "Senate Report").

COMPLAINT

detailed mandatory regulations that provide precise procedures that prisons must follow.  The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4.      Despite these mandatory protections, while incarcerated at FCI Dublin from February 2, 2021 until December 2, 2022 when she was transferred to Federal Detention Center, Philadelphia Plaintiff, was repeatedly sexually abused by Defendant ALWINE[2], subjected to excessive force by Officer TURNER, and retaliated against by Officers RAMOS, CARSON, and PHILLIPS, and N. RAMOS.  In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

5.      As a result of Defendants (including Defendant ALWINE) and Officers RAMOS, CARSON, PHILLIPS, and TURNER, and N. Ramos's actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

6.      Plaintiff brings this suit under the United States Constitution Eighth Amendment's prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual assault, and in connection with the deficient supervision and custodial care provided by various BOP personnel, including Defendant ALWINE, and Officers RAMOS, CARSON, PHILLIPS, and TURNER, and N. Ramos, within the scope of their employment within the BOP.

**JURISDICTION AND VENUE**

7.      This Court has original subject matter jurisdiction in this action involving claims arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b). Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing actions seeking relief against the United States.

8.      The Court has personal jurisdiction of the Defendants because the alleged incidents occurred within the confines of the State of California.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

---

[2]  The proper spelling of Defendant ALWINE's name is unknown and it has alternatively been spelled ALLINE, ALLWINE, and ALEWINE in other filings.

COMPLAINT

1  boundaries of this District, in the County of Alameda.

2  **THE PARTIES**

3      10.      At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP,

4  incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  Plaintiff was transferred to

5  FDC, Philadelphia on December 2022 and remains there now.

6      11.      Defendant United States of America (hereinafter "United States") is the appropriate

7  defendant for Plaintiffs' claims under the Federal Tort Claims Act.  The United States is a

8  sovereign entity that has waived its immunity for certain claims, including the claims set forth

9  herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees

10  that occur within the scope of their employment.

11      12.      At all times relevant hereto, Defendant United States, acting through the BOP, was

12  responsible for the operation, control, supervision, policy, practice, implementation, and conduct

13  of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training,

14  supervision, management, discipline, and conduct of all BOP personnel, including but not limited

15  to Defendant ALWINE and Officers RAMOS, CARSON, PHILLIPS, and TURNER, and N.

16  RAMOS .

17      13.      In addition, at all relevant times, United States was responsible for enforcing the

18  rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the

19  United States.

20      14.      Defendant ALWINE ("Defendant ALWINE") was an officer at FCI Dublin during

21  the time period relevant to events described herein and is sued in her individual capacity.  While

22  performing the acts and omissions that Plaintiff alleges in this complaint, Defendant ALWINE

23  was acting within the scope of her official employment, or with the BOP's permission and consent

24  and under color of federal law.

25      15.      Officer RAMOS ("Officer RAMOS") was an officer at FCI Dublin during the time

26  period relevant to events described herein.  While performing the acts and omissions that Plaintiff

27  alleges in this complaint, Officer RAMOS was acting within the scope of his official employment,

28  or with the BOP's permission and consent and under color of federal law.

3

COMPLAINT

16.     NICHOLAS T. RAMOS ("N. RAMOS")[3] was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiff alleges in this complaint, N. RAMOS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

17.     Officer CARSON ("Officer CARSON") was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiff alleges in this complaint, Officer CARSON was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

18.     Officer PHILLIPS ("Officer PHILLIPS") was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiff alleges in this complaint, Officer PHILLIPS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

19.     Officer TURNER ("Officer TURNER") was an officer at FCI Dublin during the time period relevant to events described herein and is sued in his individual capacity.  While performing the acts and omissions that Plaintiff alleges in this complaint, Officer TURNER was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

20.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendant ALWINE, and Officers RAMOS, CARSON, PHILLIPS, and TURNER, and N. RAMOS to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

21.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

---

[3] In August 2022, former Dublin Officer Nicholas T. Ramos died by suicide while on administrative leave and under investigation for sexually abusing incarcerated women.  For clarity, this filing will refer to former Officer Nicholas T. Ramos as "N. Ramos" who is now deceased. The filing will also reference N. Ramos's brother who was also an officer at FCI Dublin and is living as "Officer Ramos."

COMPLAINT

22.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

23.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant.  Accordingly, each of them is jointly and severally liable to Plaintiff.

24.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

**CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS**

25.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

26.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

27.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on April 3, 2023.  By October 3, 2023, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

28.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

## FACTUAL ALLEGATIONS

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

29.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

30.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities.  *Id.*

31.     Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates."  *Id.* § 115.31(a).  The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years.  *Id.* § 115.31(b)–(c).  In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies."  *Id.* § 115.31(c).

32.     PREA regulations mandate staff reporting.  BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of

6

responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a).

33.     Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b). The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e). Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f). "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

34.     Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment. *Id.* § 115.71(h)–(i). After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id.* § 115.73(a)–(b). The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

35.     PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse. PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id.* § 115.67. These protective measures include strict limits on the use of administrative segregation. The regulations provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and . . . there is no available alternative means of separation

1    from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility

2    may" hold the individual in segregated housing for "less than 24 hours while conducting the

3    assessment."  *Id.* § 115.43(a).   Any incarcerated person placed in protective custody for this

4    purpose "shall have access to programs, privileges, education, and work opportunities to the extent

5    possible."  *Id.* § 115.43(b).

6         36.    Defendants repeatedly violated these regulations.  From inadequate training, to lack

7    of confidential reporting mechanisms and access to outside support services, to failures in

8    administrative investigations, widespread misuse of administrative segregation, and rampant staff

9    retaliation, its actions and failures to act created an environment that exposed Plaintiff to an

10   unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked

11   at the trial of Warden GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United

12   States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

13   **II.    FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.**

14        37.    Eight former officers—including former Warden Ray Garcia and a former

15   chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021,

16   with more charges likely forthcoming.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR

17   (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury

18   trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in

19   federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*,

20   No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of

21   supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D.

22   Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-

23   cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised

24   release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending);

25   *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following

26   guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count

27   of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG

28   (N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following

COMPLAINT

guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

38.     Warden Garcia was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021.  As the warden, Warden Garcia was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Warden Garcia was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

39.     Warden Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI.  Warden Garcia was sentenced to 5 years and 10 months in prison.

40.     Warden Garcia led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many more of his underlings.

41.     Warden Garcia had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates.  Despite this knowledge, Warden Garcia did not do anything to stop it, even though he had a duty to do so.  Due to the fact that Warden Garcia had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

42.     Warden Garcia had actual knowledge that inmates complained about the assaults.  Warden Garcia knew or should have known that the inmates were subjected to retaliation.  Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.

43.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Warden Garcia.  Warden Garcia's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

COMPLAINT

44.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, Warden Garcia failed to protect the inmates and turned a blind eye.  Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional officers and employees the nickname – "the Rape Club."

45.     Further, Warden Garcia and others inadequately supervised and trained the prison's correctional officers and other employees.  The UNITED STATES failed to supervise which was a substantial factor in causing Plaintiff's abuse.

46.     Defendants repeatedly violated the law.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Warden GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

**III.     Officer TURNER Subjected Plaintiff To Sexual Harassment.**

47.     Plaintiff was incarcerated at FCI Dublin beginning on or around February 2021.

48.     Officer TURNER was a temporary unit officer in Units B and C when there was a shortage of staff.  On one occasion, Officer TURNER yelled at a group celebrating someone's birthday and yelled "I told you bitches to shut the fuck up."  Plaintiff tried to verbally defend the birthday person who was crying, but Plaintiff was sent to the SHU for 30 days for threatening Officer TURNER.  Plaintiff talked to Officer Putnam about this incident but nothing was done.  Plaintiff also saw Defendant ALWINE and Officer TURNER talking and believed them to be friends.  As a result, Plaintiff developed a fear of retaliation for speaking up.

49.     In February 2022, Officer TURNER got in a verbal altercation with Plaintiff when she heard him verbally harassing women and yelling at them.  As a result of the verbal altercation, he threatened Plaintiff that he would conduct a search of her room (or a "hit") and he told her she should "kiss his fucking ass."  Plaintiff told him this comment was inappropriate, especially because she is a survivor of past sexual trauma.  Plaintiff reported this comment to the Dublin

10

Special Investigative Specialist, Officer Putnam.  She got into contact with the legal service organization, Centro Legal de la Raza, and they reported this conduct to the facility leadership as retaliation.  Plaintiff filed grievances on March 17, 2022, to report what happened and also to get the disciplinary action filed against her removed, but nothing was done.  Soon after officials took her legal paperwork and she was sent to Special Housing Unit (SHU) without justification.

**IV.    Defendant ALWINE, and Officers CARSON, PHILLIPS, and TURNER Retaliated Against Plaintiff for Reporting TURNER's Abuse.**

50.    Plaintiff also faced a series of retaliatory searches of her room where officers took her property for no apparent reason.  Many of these searches involved N. RAMOS.  He and others would harass her, saying things such as, "You're the one that likes to cause problems;" and "I'm gonna hit your room again, you'll see when you get back."  They would take things like clothes, hygiene, books, and things she crocheted for her kids.

51.    Plaintiff also got disciplinary actions against her for no reason as retaliation.  For example, in June or July 2022, while she was in the pill line, Officers CARSON and PHILLIPS accused her of having shoes that she didn't buy and locked her in her room.  They put her in handcuffs and sent her to the SHU.  They searched her room, claiming she assaulted them when she never did.  In fact, she was the one who was assaulted.  She also was never able to get her prescribed medications.

52.    Plaintiff lived in the disability accessible side of the facility Unit C because she lived with an elderly Native woman who requested that she live with her to assist her.  After she reported the above described situation with Officer TURNER, Defendant ALWINE, a unit officer overseeing Plaintiff's side of the unit, began showing up to her cell at night.  Plaintiff believed that Officer TURNER wanted to show her they all work together and sent Defendant ALWINE to threaten her.

**V.    Defendant ALWINE Subjected Plaintiff To Sexual Abuse.**

53.    Plaintiff went back and forth between the A, B, and C units because she worked in the A/B unit and lived in the C unit where Defendant ALWINE sexually abused Plaintiff.

54.    When Plaintiff moved to the C unit, she was initially told by fellow Native people

COMPLAINT

1   at the FCI, including her old cellmate, that Defendant ALWINE would go into peoples' rooms at

2   night to disturb them while they are sleeping.

3       55.     Defendant ALWINE sexually abused Plaintiff every week or two for many months.

4   The first time Defendant ALWINE went into Plaintiff's cell to assault her, in April 2022, it was

5   late at night and Defendant ALWINE banged her flashlight against the bed and yelled at Plaintiff

6   because she was unable to see her.

7       56.     On another occasion, around April 2022, Plaintiff woke up to Defendant ALWINE

8   undressing her. Defendant ALWINE proceeded to move her hands to Plaintiff's hips to pulls down

9   Plaintiff's pants partially, about halfway.  Defendant ALWINE proceeded to insert two fingers

10  into Plaintiff, penetrating her, going in and out approximately four times.  While doing this,

11  Defendant ALWINE covered Plaintiff's mouth so that Plaintiff could not yell and wake up her

12  cellmate.

13      57.     The next four times Defendant ALWINE did the same thing to her.  Plaintiff did

14  not report because she felt targeted by Officer TURNER and because of the negative reaction line

15  officers had when Warden Garcia was fired.

16      58.     Plaintiff is a survivor of childhood sexual assault.  She was molested as a child so

17  often, that she used to sleep through the molestation, and still has the ability to sleep through

18  sexual assault because of her trauma.  As a result, when Defendant ALWINE came into Plaintiff's

19  room the first time and started undressing her, she did not immediately wake up.  When Plaintiff

20  finally did wake up, she saw Defendant ALWINE undressing her while on she was on top of her.

21  Plaintiff fought her off at which point Defendant ALWINE ran from Plaintiff's cell.  Plaintiff's

22  elder cellmate took sleep medication that made her sleep through the night, so she did not hear

23  Defendant ALWINE come into her cell.

24      59.     Plaintiff would have bruises on her arms or legs after encounters with Defendant

25  ALWINE.  Defendant ALWINE came into Plaintiff's cell to assault her every week or two starting

26  in April 2022 whenever she worked the night shift.

27      60.     Plaintiff asked her cellmate to not take her medication for some nights so that if

28  Defendant ALWINE came into the room, she would see and be able to help Plaintiff.

COMPLAINT

61.     On another occasion, around September 2022, Plaintiff's cellmate did not take her sleeping medication.  On information and belief, Defendant ALWINE came into the cell to attempt to take off Plaintiff's clothes again. Plaintiff awoke to a sudden slam and saw her cellmate on the floor.  When Plaintiff looked up, she saw the door to their cell close, with an officer walking out of her cell.  Plaintiff's cellmate was unconscious on the floor and had a black eye. Plaintiff knew that Defendant ALWINE came into the room and when her cellmate woke up, Defendant ALWINE likely punched her so that she could flee.  Both Plaintiff and her cellmate were too frightened to report this because they knew that the officers would take anything and everything from incarcerated individuals who report, including video visits and phone calls, their only treasures in prison.

62.     On another occasion, Defendant ALWINE was on top of Plaintiff and attempted to take off Plaintiff's pants; however, Plaintiff fought back this time.  Defendant ALWINE proceeded to cover Plaintiff's mouth and Plaintiff kicked Defendant ALWINE.  Defendant ALWINE then decided to leave when Plaintiff's cellmate started waking up.

63.     As a result of this abuse, Plaintiff began to feel helpless because she did not know what to do.  Though Plaintiff was tired of keeping quiet, she was fearful to report the abuse and heard that others had similar experience with Defendant ALWINE.

64.     As a result, Plaintiff attempted to commit suicide by hanging herself in the shower. Although Plaintiff reported to psychiatry after this attempt, the psychiatrist took no action and said that if Plaintiff really wanted to kill herself she would have already done it.

65.     Plaintiff also tried to transfer units by applying to various programs but was denied. Plaintiff then decided to attempt to be transferred about of Dublin by intentionally getting into a fight.  As a result of the fight,  she was sent to the SHU for two months and was transferred out of Dublin.

## VI.     Plaintiff Faced Excessive Force By Officer RAMOS

66.     On September 28, 2022, Plaintiff got into an altercation with another prisoner in the facility.  Officer RAMOS was another unit officer in the facility.  Officer RAMOS came into the cell and immediately grabbed Plaintiff's arms so hard that he left an imprint on her left arm.  He

then handcuffed Plaintiff's hands behind her back.  He told her to get on the ground.  Plaintiff asked why she needed to do this if she was already handcuffed.  Officer RAMOS suddenly got angry and abruptly threw Plaintiff on the ground.  He threw Plaintiff on her face so hard that she urinated on herself.  As a result of this assault, Plaintiff had extensive bruises on her arms and neck, and continues to have pain in her arm.

67.     After this occurred, Plaintiff was sent to the SHU.  In the SHU, Plaintiff was forced to clean the cells in the SHU between September 28 to December 1, 2022 every day without compensation.

**VII.   Plaintiff Experienced Discrimination for Being Native American and Was Retaliated Against for Advocating for Herself.**

68.     Plaintiff is from the Northern Arapahoe Tribe in Wyoming.  During Dublin's "Native American Day" in September in 2021, the facility brought in someone to smudge the Native people in the prison with sage and they did a sweat lodge according to their spiritual practices.  N. RAMOS harassed her, asking, "Are you even really Native?" and questioned many other women in the facility about their native ancestry.  He said that they were not registered in the system as "really Native" and that they would not be able to do the ceremony, get the blessing, or do sweat lodge.  N. RAMOS denied ten (10) women who Plaintiff knew were Native American from being able to do the ceremony. Plaintiff asked N. RAMOS to speak to a lieutenant about this. Plaintiff said "We are in a federal prison because we are tribes on federal land and these women are Native.  Why are you denying their right to practice ceremony?"  N. RAMOS responded, "Oh you want to talk to a lieutenant? Then I will hit your room."

69.     Immediately after this interaction, Plaintiff's room was searched and many of her possessions were taken, stolen, or thrown away.  This included Plaintiff's dreamcatchers, clothes, blankets, shoes, and sweatshirts.  He also took her cellmate's items including crocheted items so that the cellmate would get angry at her.

**VIII.   Plaintiff Attempted To Report Her Abuse Without Avail**

70.     In October or November 2022, Plaintiff attempted to report her previous sexual abuse by Defendant ALWINE in a number of ways.  Plaintiff sent an email to the Department of

14

COMPLAINT

Justice, but nothing was done.  Plaintiff began to have physical manifestation of being re-triggered by her trauma.  Plaintiff also reported the abuse to the psychologist, Dr. Hong, after she had experienced those mental health effects.  The psychologist referred Plaintiff to the Special Investigative Specialist, Officer Putnam.  Plaintiff reported it to him as well, and he told her to report to the DOJ which she already had done.  When Plaintiff asked whether she should submit a grievance, Officer Putnam told her not to file the forms and that he wanted to investigate the matter before she filed the grievance forms.  No one responded to any of Plaintiff's reports and when she was transferred, all her legal paperwork was thrown away.

71.     As a result of the trauma she has experienced, Plaintiff does not feel safe anywhere she goes.  Plaintiff feels desperate to get out of the prison because she lives in a constant state of fear.  While at FCI Dublin, Plaintiff attempted to commit suicide.  She got tired of keeping quiet, but was afraid to report Defendant ALWINE.  She was told that others had similar experiences with Defendant ALWINE.

72.     When Plaintiff was in Dublin, she was afraid that all the doors did not lock and that she would continue to be attacked.  Plaintiff feels like this experience has made her emotional state deteriorate and she often has breakdowns and is easily agitated and can easily receive disciplinary tickets because of these mental shutdowns.  Plaintiff has anxiety and often blacks out. Now, at FCI Danbury Plaintiff still experiences rampant retaliation and feels terrified because she cannot trust any officers in the federal prison, and no one has done anything as a result of her attempts to report.

73.     Although Plaintiff's official placement is FCI Danbury, Plaintiff is currently incarcerated in Western Massachusetts Regional Women's Correctional Center, a non-BOP facility, when FCI Danbury officers placed her there for SHU placement. She has been incarcerated there for two and half months since January 2024 without being provided disciplinary paperwork, a disciplinary hearing, or how long she will remain there.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Plaintiff Against Defendant ALWINE*
**(Eighth Amendment, Cruel and Unusual Punishment)**

15

COMPLAINT

74.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

75.     Defendant ALWINE subjected Plaintiff to serious bodily harm as defined by the Eight Amendment when she sexually assaulted and harassed Plaintiff and provided or withheld privileges to coerce sexual favors from Plaintiff.

76.     Defendant's actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under the Eighth Amendment of the United States Constitution.

77.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens* contexts.

### CLAIMS FOR RELIEF UNDER THE FTCA

### SECOND CLAIM FOR RELIEF
#### *Plaintiff Against the United States*
#### (Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)

78.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

80.     A person commits a sexual battery when he acts with the intent to cause a harmful or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

81.     Defendants subjected Plaintiff to sexual acts, with the intent to cause harmful or offensive contact.  Such contact with Plaintiff was deeply offensive to their personal dignity and

COMPLAINT

1   would offend a person of ordinary sensitivity.

2         82.     As a direct and proximate result of the foregoing, Plaintiff suffered psychological

3 trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and

4 economic injuries.

5         83.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

6 States for the wrongful acts/omissions of its employees.

7 

**THIRD CLAIM FOR RELIEF**
***Plaintiff Against the United States***

8 **(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

9         84.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs

10 as if fully set forth herein.

11         85.     Plaintiff brings this claim against the United States under the FTCA based on acts

12 and/or omissions of Defendant United States and all other Defendants while working in their

13 official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

14 acting within the scope of their employment as federal employees in their official uniforms during

15 work hours.

16         86.     A person is liable for IIED when the defendant engages in outrageous conduct,

17 when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the

18 conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress,

19 the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe

20 emotional distress.

21         87.     Defendant United States, individually or through its agents, servants, contractors,

22 and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual

23 acts while incarcerated in their custody, through the above-described acts and omissions.

24         88.     Plaintiff's injuries and damages were caused by intentional torts perpetrated by

25 Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts

26 perpetrated by its agents, including correctional officers, that occurred within the scope of their

27 employment under color of federal law.

28         89.     At all relevant times, Defendants were acting under color of law by supervising,

17

COMPLAINT

1   disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff

2   within the scope of their employment for the United States.

3       90.     Defendants used their authority as law enforcement officers to sexually assault and

4   harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered

5   psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as

6   medical and economic injuries.

7       91.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

8   States for the wrongful acts/omissions of its employees.

9                               **FOURTH CLAIM FOR RELIEF**
                                 *Plaintiff Against the United States*
10                            **(Sexual Harassment - Cal. Civ. Code § 51.9)**

11      92.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs

12   as if fully set forth herein.

13      93.     Plaintiff brings this claim against the United States under the FTCA based on acts

14   and/or omissions of Defendant United States and all other Defendants while working in their

15   official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

16   acting within the scope of their employment as federal employees in their official uniforms during

17   work hours.

18      94.     A person is liable for sexual harassment when a special relationship exists between

19   a plaintiff and person where there is a considerable imbalance of power; the defendant has made

20   sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or

21   engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on

22   gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer

23   economic loss or personal injury including emotional distress or violation of a statutory or

24   constitutional right.

25      95.     There exists in FCI Dublin, as all prisons, an extreme imbalance of power between

26   the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons

27   lives.  In addition to this always-present imbalance of power, the problem is compounded by

28   retaliation against those who report misconduct.

COMPLAINT

96.     For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between Defendants and Plaintiff due to the coercive power of the officers' positions.

97.     Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9 by repeatedly sexually abusing her.

98.     Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

99.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**FIFTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

100.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

101.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

102.    A person interferes with another's civil rights if the person uses or attempts to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by the Constitution or state or federal laws.

103.    Speech alone is sufficient where the threatened person reasonably fears violence because the person threatening had the apparent ability to carry out the threat.  Because of the coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation before, Plaintiff reasonably feared violence by Defendants.

104.    Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and unusual

19

punishment.  Defendants violated these rights by threats, intimidation, or coercion.

105.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

106.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SIXTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Gender Violence – Cal. Civ. Code § 52.4)**

107.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

108.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

109.    Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

110.    The conditions at FCI Dublin are that of coercive conditions, as evident by officers regularly withholding things like out of cell time or personal property in exchange for sexual favors.  Further, officers exchanged sexual favors for perks that are not normally available to inmates such as treats, alcohol, and the ability to roam the halls.

111.    Defendants discriminated against Plaintiff based on her sex and/or gender when they repeatedly sexually abused her, physically intruding and invading upon her bodies under coercive conditions.

112.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

COMPLAINT

113.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SEVENTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Invasion of Privacy – California common law)**

114.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

115.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

116.    The elements of invasion of privacy are (1) whether the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

117.    Defendants intentionally and substantially intruded, both physically and otherwise, upon Plaintiff's seclusion when they repeatedly sexually abused her.

118.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

119.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

120.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**EIGHTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Negligence – California common law)**

COMPLAINT

121.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

122.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

123.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

124.    At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

125.    **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

126.    BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

127.    United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

128.    It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

129.    It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

22

1    130.   **Breach of Duty.** The United States, individually or through its agents, servants,

2    contractors, and/or employees acting within the scope of their employment, breached those duties

3    by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing

4    sexual abuse and retaliation against Plaintiff.

5    131.   A reasonable administrator would have complied with PREA regulations, including

6    safeguarding against retaliation for those who report misconduct.

7    132.   A reasonable administrator would also not have exposed Plaintiff to the danger of

8    ongoing sexual abuse.

9    133.   Agents, servants, contractors, and/or employees of Defendant United States knew

10   or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty

11   directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

12   134.   Despite notice, Defendant United States, through its employees, did not take

13   reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal

14   regulations and BOP policy.

15   135.   The United States, through its employees also failed to train, retain, and supervise

16   officers as well as monitor and investigate them.

17   136.   When the employer is aware of its employees' tortious conduct, as it was here, and

18   it ignores or assists in it, retention of employees does not represent legitimate policy

19   considerations warranting discretion.

20   137.   At all relevant times, each of the Defendants stood in such a relationship with the

21   other Defendants as to make each of the Defendants liable for the acts and omissions of all other

22   Defendants in regard to their treatment of Plaintiff.

23   138.   **Causation.** The United States' negligence in administering FCI Dublin is a direct

24   and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety,

25   depression, loss of quality of life and dignity, as well as medical and economic injuries.

26   139.   Officers' employment at FCI Dublin was essential to their commission of tortious

27   misconduct, which would not have happened absent their employment and privileges.

28   140.   Defendant officers' conduct was grossly negligent as they showed complete

COMPLAINT

disregard for rights and safety of Plaintiff.

141.    It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent serious harm including sexual abuse.

142.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### NINTH CLAIM FOR RELIEF
#### *Plaintiff Against the United States*
### (Negligent Infliction of Emotional Distress ("NIED") – California common law)

143.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

144.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

145.    The elements of an NIED claim are as follows: (1) the defendant engaged in negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory standard was a cause of the serious emotional distress.

146.    Defendant officers and the United States engaged in negligent conduct and willful violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both extreme and outrageous behavior and the negligence.

147.    The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

148.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### TENTH CLAIM FOR RELIEF
#### *Plaintiff Against the United States*

24

COMPLAINT

**(Assault and Battery - California common law)**

149.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

150.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

151.    Assault occurs when (1) a defendant acts, intending to cause harmful or offensive contact, and (2) the plaintiff reasonably believes that they were about to be touched in a harmful or offensive manner.  *See, e.g.*, Judicial Council of California, California Civil Jury Instructions at 845 (2024).

152.    A person committed a battery if (1) they touched a plaintiff with the intent to cause harm, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed by the touching.  *Id.* at 842.

153.    Defendants subjected Plaintiff to assault and battery when Officer RAMOS grabbed Plaintiff, making unconsented physical contact with him, throwing Plaintiff to the ground, injuring her.

154.    As a direct and proximate result of the foregoing, Plaintiff suffered immediate physical and emotional harm.

155.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, and each of them, as follows:

156.    An award of compensatory, punitive, and nominal damages to Plaintiff in an amount to be determined at trial;

COMPLAINT

157.   An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

158.   For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED:  March 7, 2024                ARNOLD & PORTER KAYE SCHOLER LLP

By:   */s/ Carson D. Anderson*
_____
Stephen Cha-Kim
Carson D. Anderson
Natalie Steiert


DATED:  March 7, 2024                RIGHTS BEHIND BARS

By:   */s/ Oren Nimni*
_____
Ms. Amaris Montes (she/her)
Mr. Oren Nimni (he/him)


Attorneys for Plaintiff

COMPLAINT